IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

RICHARD HILLER,

*Defendant*.

Criminal No. ELH-18-0389

**MEMORANDUM**

Defendant Richard Hiller, through counsel, has filed a "Motion For Emergency Relief." ECF 33 (the "Motion"). Hiller, who is over 65 years of age, is currently serving a sentence of 40 months' incarceration at FCI Allenwood Low in Pennsylvania ("Allenwood"), in connection with his drug convictions involving oxycodone. He asks this Court "to pass an Order suspending the service of the Defendant's sentence until such time as the service of that sentence can be executed without danger to his health and wellbeing." *Id.* at 1. The Motion is predicated on health concerns relating to the COVID-19 pandemic. The government opposes the Motion. ECF 35. No reply has been filed. *See* ECF 34 (setting deadline for reply, which has expired).

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

## I.     Factual Background

On August 24, 2018, Hiller pleaded guilty to Count One and Count Two of an Information (ECF 1), charging him with Conspiracy to Distribute Oxycodone and Possession with Intent to Distribute Oxycodone, in violation of 21 U.S.C. §§ 841 & 846. *See* ECF 12. The plea was tendered pursuant to a Plea Agreement (ECF 7), which included a Stipulation of Facts. *Id.* at 9-10.

According to the Stipulation of Facts, Hiller was a licensed pharmacist in Towson, Maryland. Between January 2014 and February 2017, he used his position to fill prescriptions for Oxycodone in exchange for sexual favors from several women. *Id.*

Defendant had no prior criminal record. His advisory sentencing guidelines called for a sentence of imprisonment ranging from 70 to 87 months. ECF 14 (Presentence Report), ¶ 70; *See* ECF 22 (Statement of Reasons). The guidelines were driven largely by the drug quantity. *See* ECF 14, ¶ 17.

Sentencing was held on December 10, 2018. ECF 20. The government sought a sentence of imprisonment of 64 months. ECF 19 at 1. The defense sought a "minimal" sentence. ECF 16 at 5. I sentenced the defendant to a below-guidelines sentence of 40 months' imprisonment, and a below-guidelines fine of $15,000. The judgment was entered the next day, December 11, 2018. ECF 21. The Court set a self-surrender date of January 14, 2019. *Id.* at 2. No appeal was filed.

## II. Discussion

Defendant was born in August 1954. ECF 14 at 3. As noted, he is incarcerated at Allenwood.

Hiller complains that the Bureau of Prisons ("BOP") has transferred prisoners from other penal institutions to Allenwood, and many of the transferees were exposed to inmates infected with the COVID-19 virus. ECF 33 at 1. In addition, he asserts that inmates at Allenwood have been stricken with Covid-19. *Id.* In view of defendant's elderly status, he claims that his "continued incarceration" is "hazardous to the physical health of the Defendant and has created an intolerable mental crisis." *Id.* at 2. Moreover, he maintains that his continued incarceration "constitutes cruel and unusual punishment in contravention of the Constitution…." *Id.* And, he asserts that, but for information in his Presentence Report (ECF 14), "collateral to

the charges," he would have been eligible for relief under the 2018 First Step Act. *Id.*[1]

As the government observes, the Motion cites no authority for this Court to suspend the defendant's sentence. ECF 35 at 2. Indeed, the Court is unaware of any federal law that would permit the Court to grant defendant's request.

Under 18 U.S.C. § 3582, titled "Imposition of a sentence of imprisonment," "a district court *may not* modify a term of imprisonment once it has been imposed unless the Bureau of Prisons moves for a reduction, the Sentencing Commission amends the applicable Guidelines range, or another statute or Rule 35 expressly permits the court to do so." *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (emphasis added) (internal quotations marks and citations omitted); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010) (recognizing that under § 3582 the court generally "may not modify a term of imprisonment once it has been imposed."); *United States v. Chambers*, ___ F.3d ___, 2020 WL 1949249, at *3 (4th Cir. Apr. 23, 2020) ("Generally, sentences may not be modified once imposed."); *United States v. Brown*, RDB-16-0553, 2020 WL 1479129, at *1 (D. Md. Mar. 26, 2020) (denying motion for release from a halfway house to home confinement, because the court lacks authority to do so); *see also United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). None of the exceptions is applicable here.

As indicated, an exception to the finality of a sentence may be authorized by statute. Section 3582(c)(1)(B) of 18 U.S.C. provides: "The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case -- … (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute…."

---

[1] Defendant does not identify the collateral information.

Hiller does not discuss the First Step Act ("FSA"), enacted by Congress in December 2018. *See* Pub. L. No. 115-291, 132 Stat. 5194. But, it is pertinent. As part of the FSA, Congress amended 18 U.S.C. § 3582(c) to enable a court to reduce a sentence if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239; *see also United States v. Decator*, CCB-95-0202, 2020 WL 1676219, at *1 (D. Md. Apr. 6, 2020).

Prior to the passage of the First Step Act, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director" of the BOP. *Decator*, 2020 WL 1676219, at *1. But, under the FSA, a court may now conduct such a review "upon motion of the defendant." *Id.* Moreover, the court "may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that 'extraordinary and compelling reasons' warrant it." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)(i)). However, of import here, the defendant may bring such a motion only "if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *Decator*, 2020 WL 1676219, at *1 (citing 18 U.S.C. § 3582(c)(1)(A)).

Here, the Motion is silent as to any attempt by defendant to exhaust his remedies before seeking relief from this Court. That is a critical omission. Even without the omission, I discern no basis for relief.

As Judge Blake explained in *Decator*, 2020 WL 1676219, at *2, pursuant to 28 U.S.C. § 994(t), the United States Sentencing Commission "is responsible for defining 'what should be considered extraordinary and compelling reasons for sentence reduction' under § 3582(c)(1)(A)." She noted that, "[a]ccording to the Commission's Policy Statement,

'extraordinary and compelling reasons' exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) 'other reasons' as determined by the BOP. *See* U.S.S.G. §1B1.13 cmt. n.1(A)–(D)." U.S.S.G. § 1B1.13 cmt. n.1(D) is referred to as the "catch-all provision." *See Decator*, 2020 WL 1676219, at *2.

Hiller has not satisfied the criteria.  As to factor B, he is over 65 years of age.  But, it does not appear that he has served 75 percent of his sentence.  And, assuming that the catch-all provision generally might cover the COVID-19 pandemic, he provides no basis to invoke it here.

The defendant largely relies on the prospect of a COVID-19 outbreak at Allenwood, but does not allege that he has COVID-19.  Nor does he allege that he has actually been exposed to anyone with COVID-19.  And, he does not present evidence that officials at Allenwood have been derelict in managing the institution, "beyond the barebones allegation that Allenwood has accepted transfer inmates from New York."  ECF 35 at 4.

The government has outlined the "significant efforts" of the BOP to address the pandemic, so as "to ensure the health and safety of inmates and BOP personnel. *See* Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp."  *Id.* at 5.  As part of BOP's Phase One response to coronavirus/COVID-19, BOP sought to identify "where the infection was occurring and best practices to mitigate transmission."  *Id.*  In addition, BOP

created "an agency task force" to study and coordinate its response to coronavirus/COVID-19, including using "subject-matter experts both internal and external to the agency including guidance and directives from the [World Health Organization (WHO)], the [Centers for Disease Control and Prevention (CDC)], the Office of Personnel Management (OPM), the Department of Justice (DOJ) and the Office of the Vice President. BOP's planning is structured using the Incident Command System (ICS) framework." ECF 35 at 5.

In addition, the government represents that on March 13, 2020, BOP, "after coordination with DOJ and the White House, implemented its Phase Two response 'in order to mitigate the spread of COVID-19, acknowledging the United States will have more confirmed cases in the coming weeks and also noting that the population density of prisons creates a risk of infection and transmission for inmates and staff.'" *Id.* Further, the government contends that BOP has taken steps to "ensure the continued effective operations of the federal prison system and to ensure that staff remain healthy and available for duty." *Id.*

For example, according to the government, BOP has (a) suspended social visits for 30 days (but increased inmates access to telephone calls); (b) suspended legal visits for 30 days (with case-by-case accommodations); (c) suspended inmate movement for 30 days (with case-by-case exceptions, including for medical treatment); (d) suspended official staff travel for 30 days; (e) suspended staff training for 30 days; (f) restricted contractor access to BOP facilities to only those performing essential services, such as medical treatment; (g) suspended volunteer visits for 30 days; (h) suspended tours for 30 days; and (i) generally "implement[ed] nationwide modified operations to maximize social distancing and limit group gatherings in [its] facilities." *Id.* at 5-6.

In addition, BOP has implemented screening protocols for both BOP staff and inmates. *Id.* at 6. As part of BOP's inmate screening process, (i) "[a]ll newly-arriving BOP inmates are being screened for COVID-19 exposure risk factors and symptoms"; (ii) "[a]symptomatic inmates with exposure risk factors are quarantined; and (iii) "[s]ymptomatic inmates with exposure risk factors are isolated and tested for COVID-19 per local health authority protocols." ECF 35 at 6.

Notably, the defendant has not controverted the government's contentions concerning the safety measures implemented by the BOP. Instead, Hiller seeks release based solely on the potential harm that might befall him if he is infected, in part because of his age. This is not sufficient. As the government puts it, "if that were enough, every non-violent prisoner over 65 could seek to have his sentence immediately suspended and ordered released." ECF 35 at 4. Simply put, the coronavirus is "not tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.).

The government has also addressed 18 U.S.C. § 3622, which confers authority on the BOP "to grant furloughs." *See* ECF 35 at 3. The provision, titled "Temporary release of a prisoner," states, in part:

> The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to [ § ] 28 U.S.C. 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to—
>
> (a) visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of—
>     (1) visiting a relative who is dying;
>     (2) attending a funeral of a relative;

> (3) obtaining medical treatment not otherwise available;
> (4) contacting a prospective employer;
> (5) establishing or reestablishing family or community ties; or
> (6) engaging in any other significant activity consistent with the public interest….

As the statutory text makes plain, Congress has conferred on the BOP, not the court, the authority to grant temporary furloughs. *See United States v. Underwood*, TDC-18-0201, 2020 WL 1529160, at *2 (D. Md. March 31, 2020) (stating that the issuance of a furlough to a federal prisoner is a decision reserved to the BOP, not the court.); *Bania v. Federal Bureau of Prisons*, 2011 WL 882096, *2 (D. Minn. February 24, 2011), at *2 ("Congress has given the BOP—not the courts—the authority to grant temporary releases to federal prisoners.") (citing *United States v. Premachandra*, 1996 WL 102567, at *1 (8th Cir. 1996) (per curiam) at *1 ("18 U.S.C. § 3622 vests authority to grant medical furloughs with the Bureau of Prisons (BOP), not the federal courts")).  Thus, this Court lacks the power to grant a furlough.

## II.    Conclusion

On the basis of the record before me, the Court has no legal ground to suspend Hiller's sentence.  Therefore, for the reasons set forth above, I shall deny the Motion, without prejudice.

An Order follows.


Date:  April 28, 2020                                    _____/s/_____
                                                        Ellen L. Hollander
                                                        United States District Judge