IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

RICHARD HILLER,
   *Defendant.*

Criminal Action No. ELH-18-0389

**MEMORANDUM OPINION**

Richard Hiller, through counsel, filed a "Third Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)." ECF 47 (the "Third Motion" or "Motion").[1] The Motion is supported by four exhibits. ECF 47-1 to ECF 47-4. Hiller, who is over 65 years of age, is currently serving a sentence of 40 months' incarceration at FCI Allenwood Low in Pennsylvania ("Allenwood"), in connection with his drug convictions involving oxycodone. The government previously opposed defendant's prior motions. *See* ECF 35; ECF 42. By email, the government has advised that it continues to oppose defendant's request for compassionate release, but it does not intend to file another response.

No hearing is necessary to resolve the Third Motion. For the reasons that follow, I shall grant the Motion.

**I.  Background**

**A.  Procedural History**

The defendant filed his first motion for compassionate release on March 30, 2020. ECF 33. The government opposed the motion. ECF 35. I denied the motion by Memorandum (ECF

---

[1] Defendant's earlier motions are docketed at ECF 33 and ECF 40. The government's prior submissions in opposition are docketed at ECF 35 and ECF 42.

36) and Order (ECF 37) of April 28, 2020. In my ruling, I concluded that the defendant failed to exhaust his administrative remedies, as required by 18 U.S.C. § 3582(c)(1). ECF 36 at 4.

Thereafter, on May 20, 2020, the defendant filed a "Second Emergency Motion for Compassionate Release." ECF 40 (the "Second Motion"). The government again opposed the motion, contending that the defendant failed to exhaust his administrative requirements and, in any event, did not qualify for release. ECF 42.

Based on the government's contention as to failure to exhaust, I wrote to defense counsel on July 8, 2020 (ECF 43), requesting evidence of exhaustion. In response (ECF 44), counsel provided the Court with a decision from David Paul, BOP Regional Director (ECF 44-1). But, it did not pertain to compassionate release. Therefore, by Memorandum Opinion of July 31, 2020, I found that there was no indication that defendant had exhausted his administrative remedies with respect to his request for compassionate release. ECF 45. And, I denied Hiller's Second Motion, without prejudice to his right to renew at a later time. ECF 46.

Thereafter, defendant filed the Third Motion. ECF 47. Defendant has established that he has exhausted his administrative remedies. ECF 47-1. But, he provided no evidence to support a finding of "extraordinary and compelling reasons" to justify compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Accordingly, by Order of October 28, 2020, I directed defense counsel to provide the Court with additional documentation, such as the defendant's medical records, to support his claim for compassionate release. ECF 49. Counsel recently provided those medical records. ECF 50-1. The records indicate that defendant has been diagnosed with various health conditions, including hypothyroidism and stage 3 kidney disease. ECF 50-1 at 4, 6, 35.

### B.  Factual Background

The defendant was, at the relevant time, a licensed pharmacist. On July 20, 2018, he was charged in an Information with conspiracy to distribute oxycodone (Count One) and distribution of oxycodone (Count Two), in violation of 21 U.S.C. § 846 and § 841(a)(1), respectively.  ECF 1. In sum, defendant filled fraudulent oxycodone prescriptions in return for sexual favors from three women.

Hiller entered a plea of guilty to the charges on August 24, 2018 (ECF 12), pursuant to a Plea Agreement.  ECF 7.  The parties contemplated a base offense level of 30, pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  The offense level was based on the quantity of oxycodone.  *Id.* ¶ 6.  The parties contemplated a two-level increase, pursuant to U.S.S.G. § 3B1.3, because, as a pharmacist, the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.  *Id.* ¶ 6(b).  The parties also contemplated a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  *Id.* ¶ 6(d). And, the parties agreed to another two-level reduction, pursuant to U.S.S.G. §§ 5C1.2 and 2D1.1(b)(17), because the defendant qualified for the safety valve.  *Id.* ¶ 6(c).

The Plea Agreement included a stipulation of facts.  ECF 7 at 9-10.  According to the stipulation, from January 2014 until February 2017, Hiller used his position as a pharmacist to fill prescriptions for 15-milligram oxycodone pills in exchange for sexual favors from three women.  *Id.*  And, it was "reasonably foreseeable to the Defendant that the conspiracy would distribute approximately 20,500 pills each containing 15 milligrams of oxycodone."  *Id.*

On June 5, 2018, law enforcement executed a search warrant at defendant's residence and the pharmacy where he worked. *Id.* at 10. According to the stipulation, the defendant was "immediately cooperative and confessed to the misconduct described above." *Id.*

The Presentence Investigation Report ("PSR," ECF 14) was consistent with the Plea Agreement in terms of offense level. *Id.* ¶¶ 17, 26. And, defendant had zero criminal history points. *Id.* ¶ 30. Based on a final offense level of 27 and a Criminal History Category of I, Hiller's Guidelines called for a period of incarceration ranging from 70 to 87 months. *Id.* ¶ 70.

Sentencing was held on December 10, 2018. ECF 20. At the time of sentencing, the defendant was 64 years of age. ECF 14 at 3. He was prescribed the following medications: Synthroid for hypothyroidism; Zocor for high cholesterol; Zoloft for depression; and Ativan for anxiety, as needed. *Id.* ¶ 46. The Zoloft and Ativan were prescribed in connection with the prosecution; Hiller had no previous history of depression or anxiety. *Id.* Defendant also lost his pharmacist license.

The government sought a sentence of imprisonment of 64 months for this first-time offender. ECF 19 at 1. Defense counsel argued that defendant had been punished significantly by media coverage of his case, as well as by censure, ridicule, and shame. ECF 16. He added that there was no chance of repeat conduct, and thus a lengthy sentence was not warranted. *Id.* at 4. Therefore, the defense sought a "minimal" sentence. *Id.* at 5. I sentenced the defendant to a below-Guidelines term of 40 months' imprisonment (ECF 21), with a self-surrender date of January 14, 2019. *Id.* at 2.

Hiller, who was born in 1954, is now 66 years of age. ECF 14 at 3. He is presently incarcerated at FCI Allenwood Low. The defendant has served about 22 months of his 40-month sentence. ECF 47 at 3. This equates to about 55% of the sentence, exclusive of good time

credits under 18 U.S.C. § 3624(b).  *Id.*  According to the Bureau of Prisons ("BOP"), Hiller has a projected release date of November 14, 2021, but the BOP could release him earlier to a halfway house or to home confinement.

In a letter to the Court dated October 16, 2020, Hiller's wife explained that their son suffers from mental illness and his condition has deteriorated since Hiller has been incarcerated. ECF 47-4. In particular, she reported that their son was hospitalized in June 2020 and has stopped taking his medication. *Id.* Further, she implored the Court to release Hiller on home confinement so that defendant "can assist [her] in urging [their] son to get the help he needs." *Id.*

Defendant filed an administrative request for compassionate release with the Warden of Allenwood on August 12, 2020. ECF 47-1. The request was denied on August 14, 2020. ECF 47-2.

Additional facts are included, *infra*.

## II.  Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030

(1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018); *see also United States v. McCoy*, __ F.3d __, 2020 WL 7050097, at *2 (4th Cir. Dec. 2, 2020).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.  *McCoy*, 2020 WL 7050097, at *3.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 2020 WL 7050097, at *3. In U.S.S.G. § 1B1.13, the Sentencing Commission addressed the "extraordinary and compelling reasons" that might merit compassionate release. It is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." *See McCoy,* 2020 WL 7050097, at *3. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C). *McCoy,* 2020 WL 7050097, at *3. But, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act. *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§

7

1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 are expansive, and indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category." *McCoy*, 2020 WL 7050097, at *3.

In resolving a compassionate release motion, a court must also consider the factors in 18 U.S.C. § 3553(a). *See Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, ___ Fed. App'x ___, 2020 WL 6743609, at *2 (4th Cir. Nov. 17, 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). And, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

However, as indicated, § 1B1.13 was last updated in November 2018, before the enactment of the First Step Act. It is only "directed at BOP requests for sentence reductions." *McCoy*, 2020 WL 7050097, at *3 (citing U.S.S.G. § 1B1.13). "By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *Id.* at *7; *see also United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, __ F.3d __, 2020 WL 6817488, at *1–2 (6th Cir. Nov. 20, 2020); *United States v. Gunn*, __ F.3d __, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 2020 WL 7050097, at *8. Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 2020 WL 7050097, at *9 (quoting *Zullo*, 976 F.3d at 230).

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III. COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[3] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of December 4, 2020, COVID-19 has infected more than 14.2 million Americans and caused over 277,000 deaths in this

---

[2] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Dec. 4, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020).  Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available. But, it appears that a vaccine is on the horizon.

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020 and July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance.  *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION

(Nov. 2, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes. *Id.* The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand

sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the

Attorney General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9.  Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus.  *Seth*, 2020 WL 2571168, at *2.  Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.  Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[4]  As of December 4, 2020, the BOP had 124,538 federal inmates and 36,000 staff.  And, as of the same date, the BOP reported that 4,901 inmates and 1,509 BOP staff currently tested positive for COVID-19; 21,677 inmates and 2,057 staff have recovered from the virus; and 149 inmates and

---

[4] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19.  *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?name=styln-coronavisur&region=TOP_BANNER&block=storyline_menu_recirc&action=click&pgtype=LegacyCollection&impression_id=78b44851-1885-11eb-baa7-3f68d7b814c8&variant=1_Show.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems." *America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html?referringSource=articleShare.

two staff member have died from the virus. Moreover, the BOP has completed 82,068 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Dec. 4, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to FCI Allenwood Low, where the defendant is a prisoner, the BOP reported as of December 4, 2020, that one inmate and six staff currently test positive for COVID-19 and one inmate and two staff have recovered at the facility. And, the facility has completed 169 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Dec. 4, 2020).

### IV. Discussion

Hiller moves for compassionate release on the ground that his age renders him particularly vulnerable to COVID-19. ECF 47 at 2. He has also provided some evidence of his medical conditions. ECF 50-1. Moreover, Hiller contends that the sentencing factors under 18 U.S.C. § 3553(a) counsel in favor of his release. *Id.* at 3-4.

The government did not respond to the Third Motion, but noted by email that "the Government believes this motion should be denied for the same reasons Judge Hollander denied Mr. Hiller's first motion." In the government's response to Hiller's first two motions, it argued that defendant's request should be denied because "(1) The Defendant has failed to exhaust his administrative remedies; (2) the Defendant is not eligible for compassionate release; and (3) the Court lacks authority to provide the specific remedy the Defendant seeks (i.e., moving him to home confinement)." ECF 42 at 2; *see also* ECF 35.

#### A. Exhaustion of Administrative Remedies

As indicated, in response to defendant's first two motions for relief, the Court concluded that defendant failed to exhaust his administrative remedies, as required by 18 U.S.C. § 3582(c)(1). ECF 36; ECF 45.

Before filing this Motion, defendant submitted a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) with the Warden at Allenwood. ECF 47-1. In his request, Hiller noted that he is particularly "susceptible to falling victim" to COVID-19 because of his advanced age. *Id.* at 1. He also provided a proposed release plan. *Id.* at 2-3. The Warden denied defendant's request on August 14, 2020, because Hiller "did not attempt informal resolution prior to submission of administrative remedy." ECF 47-2.

Because Hiller has made an administrative request for compassionate release over thirty days ago, I am satisfied that he has exhausted his administrative remedies, as required by § 3582(c)(1)(A).

## B. Compassionate Release

As to grounds for relief under § 3582(c)(1)(A)(i), the defendant asserts that his age qualifies him for release. ECF 47 at 2. Defendant has also provided his medical records, which evidence that he suffers, *inter alia*, from hypothyroidism and stage 3 kidney disease. ECF 50-1 at 4, 6, 35.

The government has argued that defendant's age does not render him eligible for release. ECF 35 at 4. And, it noted that if defendant's age were enough, "every non-violent prisoner over 65 could seek to have his sentence immediately suspended and ordered released." *Id.*

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). However, it is widely recognized that older adults have an increased risk of severe consequences from potential COVID-19 infection. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1. Moreover, according to the CDC,

16

defendant is at an increased risk of severe illness because of his kidney disease. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

Numerous courts have found that, in light of the COVID-19 pandemic, kidney disease, as well as advanced age, qualify as compelling reasons for compassionate release. *See e.g.*, *United States v. Crenshaw*, 16-cr-0004 (PJS/SER), 2020 WL 6821872, at *1 (D. Minn. Nov. 20, 2020) (finding defendant's chronic kidney disease qualified as extraordinary and compelling reason for sentence reduction); *United States v. Johnson*, No. CR 4:16-577-BHH-1, 2020 WL 4501513, at *5 (D.S.C. Aug. 5, 2020) (granting compassionate release for inmate suffering from hypertension and chronic kidney disease, finding chronic kidney disease at "any stage is...a serious...medical condition...that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); *United States v. Williams*, __ F. Supp. 3d __, 2020 WL 4040706, at *4 (E.D. Mich. July 17, 2020) (finding defendant's age of 68 qualified as extraordinary and compelling reason); *United States v. Walker*, 11-cr-381 (SRN/HB), 2020 WL 4194677, at *4 (D. Minn. June 26, 2020) (finding defendant's age of 77 and stage 3 chronic kidney disease qualified as extraordinary and compelling reason for release); *United States v. Howard*, 4:15-cr-00018-BR-2, 2020 WL 2200855, at *3 (E.D.N.C. May 6, 2020) (granting compassionate release, in part, because inmate suffers from serious medical conditions, including stage 3 kidney disease); *United States v. Williams*, 3:17-CR-121-(VAB), 2020 WL 1974372, at *3 (D. Conn. Apr. 24, 2020) (granting compassionate release, in part, because 62-year old inmate has a "history of being treated for kidney issues").

Accordingly, I am satisfied that Hiller satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must also consider the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Hiller acknowledges the seriousness of the crime at issue here. ECF 47 at 3. But, he notes that the offense did not involve any weapons or allegations of violence. *Id.* And, he states that, "[a]s a result of the loss of his pharmacy license, there is no possibility of repetition of the offense." *Id.*

Moreover, until the occurrence of the crime at issue, defendant had led a law-abiding life; he had never been convicted of any crime, and his crime-free conduct spanned more than 60 years.[5] Further, because of defendant's non-violent history and favorable personal traits, Mr. Hiller was released on pretrial supervision from August 24, 2018, until his self-surrender on January 14, 2019. ECF 14 at 1.

In addition, there is minimal risk that defendant will return to criminal activity upon his release. Defendant is now 66 years of age, which makes recidivism unlikely. *See, e.g., United States v. Braxton*, JKB-09-478, 2020 WL 4748536, at *4 (D. Md. Aug. 17, 2020) (finding a recidivist offender would pose "little danger to the public at this point" because of his age of 63

---

[5] In 1995, Hiller was issued a citation for not having a fire extinguisher on his boat, and he was fined $50. ECF 14, ¶ 29. In my view, this is analogous to a defendant whose only prior offense is a minor traffic violation. And, many people with exemplary lives have occasionally been issued a traffic citation.

18

years) (citing U.S. Sent. Comm., The Effects of Aging on Recidivism Among Federal Offenders, 2017, at 3 ("Older offenders were substantially less likely than younger offenders to recidivate following release ... 13.4 percent of offenders age 65 or older at the time of release were rearrested[.]")). Therefore, the Court believes that Hiller would not pose a danger to the public if released.

Defendant has participated in "numerous programs" while incarcerated and "has been completely infraction free while incarcerated." ECF 47 at 3-4. Hiller's good behavior while incarcerated warrants recognition under 18 U.S.C. § 3553(a). And, it further suggests that he would not pose a danger to the community if released. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

The defendant also notes that he has a release plan that includes living with his wife and son. ECF 47 at 3. And, as noted, his son suffers from mental illness. If released, Hiller says that he would "devote time to the care of his son." ECF 47 at 3.

It is also noteworthy that Hiller's incarceration in the midst of a global pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, No. 16-cr-00473, 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary"). In particular, the pandemic affected visitation and programming.

As I see it, Hiller's incarceration for a period of 22 months is sufficient to serve the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation. Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Hiller's sentence to time

served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of ten months of home confinement as a condition of supervised release.

## V. Conclusion

For the forgoing reasons, I shall grant the Motion (ECF 47).

An Order follows, consistent with this Memorandum Opinion.

Date: December 4, 2020                                /s/
                                                     Ellen Lipton Hollander
                                                     United States District Judge